UNITED STATES, Appellee

v

DAVID PRZYBYCIEN, Private First Class, U. S. Marine Corps, Appellant

19 USCMA 120, 41 CMR 120

*Captain John N. Stafford,* USMCR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Kenneth F. Ripple,* JAGC, USNR.

*Captain Patricia A. Murphy,* USMC, argued the cause for Appellee, United States. With her on the brief was *Colonel C. R. Larouche,* USMC.

## Opinion of the Court

QUINN, Chief Judge:

Almost three years after he absented himself without authority from his Marine Corps unit at Camp Lejeune, North Carolina, the accused was apprehended in Chicago, Illinois, by agents of the Federal Bureau of Investigation. He was transferred to Camp Lejeune and brought to trial on a charge of desertion under Article 85, Uniform Code of Military Justice, 10 USC § 885, and found guilty as charged.

At trial, the accused moved, as he had previously before the convening authority, to dismiss the charge on the ground he had been deprived of a speedy trial. The motion was denied. The correctness of the ruling is the subject of this appeal.[1]

A period of one hundred seventeen days elapsed between the accused's apprehension and the trial. A chronology of events is attached as an Appendix. The matters reflected therein were presented to the law officer on argument of the motion to dismiss. It sufficiently appears that the proceedings between the accused's arrest on July 10, 1968, and the appointment of an Article 32 investigating officer on July 24 were expeditious. Similarly,

---

[1] Part of the assignment of error deals with alleged violations of Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810 and 833, respectively. See United States v Parish, 17 USCMA 411, 38 CMR 209. Article 10 requires that, on confinement, an accused be informed of the specific offense of which he is suspected and that immediate steps be taken to bring him to trial. The accused was apprehended on July 10, 1968. He reached Camp Lejeune on July 19, where he was confined in the camp brig. On July 23, the accused was "joined" to a unit. The unit then had "no information" on the accused, no "service record, service number, or . . . other information." The next day, the unit commander talked to the accused about the offense. On the argument of the motion to dismiss, defense counsel made no claim that the accused was not informed of the offense of which he was accused. Assuming, however, the accused was not informed of the offense at the time he was first confined, we perceive no prejudice to him by the delay. United States v Tibbs, 15 USCMA 350, 354, 35 CMR 322. Article 33 provides that when an accused is held for trial, the commanding officer shall, within eight days after accused is ordered into confinement, report in writing to the general court-martial authority the reasons for the delay in forwarding charges against the accused for trial. The record indicates that on July 30, the accused's commanding officer reported by letter to the general court-martial authority as to the delay in processing the charge. Considering the accused was officially assigned to the unit on July 24, it would appear that the report by the commanding officer was timely. In any event, even if the time is measured from the accused's arrest by the Federal Bureau of Investigation, there is no indication of prejudice to the accused by the delay. United States v Hounshell, 7 USCMA 3, 21 CMR 129; United States v Hawes, 18 USCMA 464, 467, 40 CMR 176.

the events in the period from September 20, 1968, when defense counsel was notified of his appointment as counsel for the accused, to November 5, 1968, the date of trial, demonstrate a reasonable rate of progress in moving the case to trial.[2] What is at issue, therefore, is the period of fifty-six days between July 24 and September 20.

During the critical period, a request for the accused's service record was forwarded to Marine Headquarters. Initial efforts to comply with the request were unsuccessful because of an error in the accused's service number, which was in the original report of absence and was carried over into the request. Eventually, the record was located at the storage facility in St. Louis, Missouri, and it was forwarded to Camp Lejeune. The evidence indicates the Government was not indifferent to the problem or unconcerned about its timely resolution. Besides the telephone calls made by the Division Legal Inspector, other measures might perhaps have been taken to expedite procurement of the service record, but what was done was not unreasonable

or untimely. Even if we were to hold the Government solely responsible for the error in the service number, we are not persuaded that the error so inordinately prolonged the period of pretrial confinement as to deprive the accused of a speedy trial. United States v Hawes, 18 USCMA 464, 40 CMR 176.

The decision of the board of review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

My brothers cite this Court's decision in United States v Hawes, 18 USCMA 464, 40 CMR 176, as authority for affirmance of this case. While I concurred in *Hawes*, I find a sufficient difference here to warrant my dissent. I would reverse the conviction and order the charges dismissed on the ground that this accused was denied military due process by reason of the fact that he was not supplied with counsel until seventy-two days after he was confined. Some fifty-eight days of that period occurred after the appointment of the Article 32 investigating officer. My brothers pass-

---

[2] When the case was before the board of review, Judge Faw, one of the members, wrote separately to express his concern about the failure of the record to indicate that the accused was accorded an opportunity to consult counsel during the seventy-two-day period of confinement. We share Judge Faw's concern. The need for the assistance of counsel during extended, but necessary, confinement is patent. Witnesses may have to be located and interviewed, and physical evidence may need to be safeguarded. See United States v Parish, 17 USCMA 411, 416, 38 CMR 209. While it is true, as Judge Faw observed, that these and other preparatory steps may be taken after formal appointment of counsel when the charges are referred to trial, the delay may disadvantage the accused. The manual of brig procedure does not indicate that a prisoner is ever informed of the right to consult counsel. Cf. United States v Hounshell, 7 USCMA 3, 7, 21 CMR 129. Brigs provide a counseling pro-

gram. Undoubtedly, the purpose of the program is to give prisoners the opportunity to obtain advice. The brig counselor, however, is no substitute for a lawyer. A Department of Defense instruction on the operation of confinement facilities prohibits confinement in excess of thirty days, without approval of the officer exercising general court-martial jurisdiction over the command which ordered investigation of the alleged offense. Department of Defense Instruction, 1325.4, October 7, 1968, paragraph III. A. 2. b. That provision, however, does not insure the accused will be apprised of his legal rights and be in a position to prepare his defense. It is appropriate, therefore, to give a prisoner in confinement for more than a brief period specific advice as to his right to consult an attorney and right to prepare for trial. Cf. Bitter v United States, 389 US 15, 19 L Ed 2d 15, 88 S Ct 6 (1967).

ing reference to the matter in footnote 2 of their opinion is, in my view, unsatisfactory.

The chronology of events, appended to the record (Appellate Exhibit 2), reflects that the accused was apprehended by the Federal Bureau of Investigation on July 10, 1968, and confined at Fort Sheridan, Illinois. He was transported to the Great Lakes, Illinois, Naval Training Station, the next day and thence to the brig at Camp Lejeune, North Carolina, on July 19th. He was officially assigned to the 2d Battalion, 6th Marines, on the 23d and an Article 32 investigating officer was appointed the next day. While defense counsel for the accused was appointed on September 6th, he was not notified of his duties until the 20th. On September 25th defense counsel filed a motion to dismiss with the Commanding General on the ground that the accused was denied a speedy trial as guaranteed him by the Sixth Amendment to the Constitution and Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810 and 833, respectively. The record is silent as to whether the Commanding General ever acted on the motion. An Article 32 investigation was conducted on October 8th. Charges were preferred and the accused informed thereof on October 18th. Trial was held on November 5, 1968. The accused was in pretrial incarceration for one hundred seventeen days.

At the outset, I must express my concern with the apparent failure of the convening authority to reply to defense counsel's pretrial motion to dismiss for lack of speedy trial. In referring a case for trial, the convening authority acts in a judicial capacity (see generally Articles 22–29, Code, supra, 10 USC §§ 822–829; United States v Nix, 15 USCMA 578, 36 CMR 76; United States v Schultz, 18 USCMA 133, 39 CMR 133) and pretrial motions of this nature are properly addressed to him. United States v Wilson, 10 USCMA 337, 27 CMR 411. His failure to act, if such it was, raises a question as to his understanding and appreciation of the judicial office he occupies. If, however, he did reply to the motion, the record, for the purpose of completeness, should show it.

The board of review, in its opinion affirming the conviction, found that "excessive pretrial delay occurred in this case." However, it also found "no evidence of such a lack of due diligence on the part of the Government as would warrant the conclusion that the accused was unlawfully denied his right to a speedy trial." The principal opinion did not allude to the accused's lack of legal representation, as noted above, but one member, in a separate concurring opinion, discussed the question at length. Because of the seriousness of the matter and my belief that all concerned with military justice are obliged to adhere not only to the letter but to the spirit of the law, where due process is concerned, I set forth his views in full:

"My concern in this case is not with the alleged lack of a speedy trial as urged at the trial and on review. I concur with the disposition and rationale of Judges Kiracofe and Eggen on this point. Nor is it with the appropriateness of the sentence. Rather, I am concerned with the complete absence of defense counsel over a period of 72 days.

"The accused returned to military custody on 10 July 1968 when apprehended by the FBI. He arrived under guard at the Camp Lejeune, North Carolina, on 19 July and was confined in the base brig. On 23 July 1968 he 'joined' a battalion of the 2nd Marine Division, FMF, and his 'office hours' were held the next day. At that time an Article 32 Investigation was directed.

"At least by the 24th of July it was obvious that the accused was facing the real probability of a general court-martial. The length of his absence and fact that an Article 32 Investigation had been appointed were sufficient to place the command on notice that appointed certified defense counsel would be required

**123**

in the case. Insofar as the record shows, no effort was made to either: provide counsel for the accused; or advise him of a right to counsel and obtain an informed waiver.

"Article 27, UCMJ, requires that the convening authority *shall*, for each general court-martial, appoint a 'defense counsel' who is both qualified and certified. It does not say *when* this appointment shall occur. The law is technically met if the appointment is made at the time of referral.

"However, it seems to me that the proper role of a defense counsel is broader than the courtroom scene. He should be concerned with the rights of the accused—attending the incident charged—throughout the entire disciplinary process. If counsel is required during a custodial interrogation absent an informed waiver, there are equally cogent reasons why counsel should also be required, absent an informed waiver, to advise and assist a general court-martial prisoner throughout all the procedural steps antecedent to trial. It is impossible to spell out in advance the precise circumstances under which the services of counsel may be of value in protecting the various 'rights' of an accused prior to trial. By providing counsel throughout the entire pretrial period, the problem can be avoided.

"The 'rights' protected by defense counsel are not limited to the trial itself. Once the relationship of attorney-and-client obtains, the counsel customarily advises and represents the accused concerning the entire case unless properly excused. We see frequent instances in which the work of a defense counsel begins with an attempt to interrogate a suspect in custody, continues throughout the pretrial investigation and the court-martial, and then extends to the review process. This is the ideal situation.

"It is obvious that the earlier a defense counsel begins to work on a case, the better job he can do. Conversely, the later he is appointed, the less time he has to prepare his case. To permit a trial counsel—or anyone else on behalf of the prosecution—to marshal evidence against an accused *in confinement* while no one is seeking evidence in the accused's behalf seems somewhat unfair. It is not an adequate answer to say that the accused will be granted more time before the trial to prepare his case if he needs it. Such time will frequently be spent in pretrial restraint. When defense counsel is provided early enough, delays to prepare for the defense may be avoided.

"I suggest that, by the simple expediency of not providing a defense counsel until the last moment required by law, a command can effectively reduce the ability of the defense counsel to best represent the accused.

"If the right to a speedy trial has any substance, the whole remedy does not lie in dismissing the charges with respect to which the right is violated. Justice is not done when a guilty man is released because the government is also guilty of a violation of the law. Consequently, we are properly reluctant to release a guilty man for this reason unless compelled by law or conscience to do so. Frequently we have cited, as a reason for *not* dismissing charges for lack of a speedy trial, that the accused never requested an early trial. This is a legal maneuver beyond the prowess of the average accused, and can only be exercised when he has counsel. By not providing counsel, a command effectively prevents the accused from requesting a speedy trial. The net result is that a command can extend the time during which a trial may be delayed without violating the 'right to a speedy trial' by not providing counsel. In final analysis, the procedure amounts to an *uninformed* waiver.

"I suggest that the right to a speedy trial really means the right

to be tried as early as possible rather than the right to have the charges dismissed when the trial is too long delayed. If defense lawyers are to help the accused receive a speedy trial, they must be provided in time to be of practical assistance.

"The question before us is whether the prosecution took sufficient measures to bring the accused to a speedy trial so that it was not, itself, guilty of a violation of the law. We unanimously conclude from the chronology before us that the prosecution took reasonable measures to expedite the trial by locating the lost service record book of the accused. It is upon this point that we reject the assigned error of lack of a speedy trial.

"But we cannot know what assistance a defense counsel would have been. Would he have permitted the pretrial investigation to proceed upon the basis of expected evidence from the service record book? Would he have waived the pretrial investigation? Would he have stipulated as to matters expected to be shown by the service record book? Would he have offered a pretrial agreement which would have led to early disposition of the case? Since there was no counsel to advise the accused during his first 72 days in confinement, we can only speculate. Indeed, it is interesting to note how rapidly the case progressed after appointment of counsel.

"The Uniform Code of Military Justice does not specifically require defense counsel to be appointed under the circumstances shown by the record of trial to have existed during the first 72 days of the accused's pretrial confinement. Nor is there a decision of the Court of Military Appeals which compels such appointment. If the failure of the government to provide counsel—absent an informed waiver—during this prolonged period was an act or omission of such magnitude as to require dismissal of a charge of which the accused was obviously guilty, it must be because such act or omission violated either the right 'to have the Assistance of Counsel for his defence' guaranteed by the Sixth Amendment to the Constitution of the United States or violated the *alter ego* of this right within the concept of 'military due process.'

"There are two reasons why this Board should not, at this level, strike the charge and specification because of this failure to provide counsel. The first has to do with the poor posture of the record with respect to this issue. The court was so preoccupied with exploring the efforts of the government to locate and obtain the service record book of the accused (a worthy inquiry) that it did not fully develop the circumstances surrounding the 72-day period without counsel. The second reason is that this is a Constitutional question involving the right to counsel—the same type of question for which the Board of Review was chastised for deciding by the late Judge Kilday (with no dissenting voice) in *United States v Culp*, 14 USCMA 199, 33 CMR 411.

"However, it is wholly proper that we express grave concern in this area, and suggest that unless convening authorities become sufficiently aware of the implications of confining suspects for long periods of time without counsel and take appropriate measures on their own to provide counsel, either statutory or judicial measures will be taken to remedy the situation. These measures may, in the long run, prove far more onerous to the command than the present requirement to use sound discretion in the matter.

"[s] Daune L. Faw
DUANE L. FAW"

I agree with much of what Judge Faw has said in his opinion but I believe he misinterprets the intent of the late Judge Kilday when he characterizes the former's opinion in United States v Culp, 14 USCMA 199, 33 CMR 411, as an effort to *chastise* the board of review for deciding a constitutional

125

question in that case. Indeed, one need only to read *Culp* to realize the error of such a view.

In my opinion, this Court should at this time take the necessary judicial measures to remedy what I believe to be an abhorrent situation. It is inconceivable that despite the specific provisions of the Uniform Code of Military Justice, a serviceman can be held *uncharged* in military confinement for seventy-two days with no thought given to releasing him or to furnishing him with a lawyer or, at the very least, informing him of his right thereto.

In Federal civilian practice, an arrested person must be taken without *unnecessary* delay before a judicial magistrate and charges preferred. If the magistrate does not find probable cause to believe that the defendant has committed an offense, he *must* discharge him. At the time of his appearance, the magistrate is *required to inform him of his right to a lawyer.* Rule 5, Federal Rules of Criminal Procedure, Title 18, United States Code. The military rules are somewhat less stringent but the intent is the same. As we said in United States v Hounshell, 7 USCMA 3, 7, 21 CMR 129, "The hearings before the Congressional Subcommittee which considered the Uniform Code clearly indicate that Congress did not intend the military practice to be different from the regular Federal criminal court procedure." Articles 10, 33, and 98, Code, supra, §§ 810, 833, and 898; Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H. R. 2498, pages 906–907.

Article 10 provides, in pertinent part, that when an accused,

". . . *charged with an offense* . . . is placed in arrest or confinement prior to trial, *immediate* steps shall be taken to inform him of the specific wrong of which he is accused and *to try him or to dismiss the charges and release him.*" [Emphasis supplied.]

Article 33 requires that:

"When a person is held for trial by general court-martial the commanding officer shall, within eight days after the accused is ordered into arrest or confinement, if practicable, forward the charges, together with the investigation and allied papers, to the officer exercising general court-martial jurisdiction. If that is not practicable, he shall report in writing to that officer the reasons for delay."

In the case at bar, the accused was confined on July 10th but charges were not served on him until October 18th. At trial, the prosecution averred that accused was confined because he was considered an escape risk. "The escape risk was predicated on, solely on the basis of the apprehension, the fact that he had been gone for a considerable period of time. . . . there are no prior convictions nor any prior nonjudicial punishments." The law officer accepted trial counsel's representation that he had seen a letter, dated July 30, 1968, explaining the delay, although such a letter could not be found. There is no reference to the delay in the pretrial advice, nor is there any contention that a *later* explanation was made to higher authorities for the continued, uncharged confinement,[1] although trial counsel admitted before the law officer that there was consternation in the unit over the possibility "that Przybycien was not even a member of the Armed Forces." The staff legal officer opined in his review that the delay was not oppressive but beneficial to the accused "for the most important reason of determining whether the right man

---

[1] In connection with Article 10, Department of Defense Instruction 1325.4, October 7, 1968, paragraph III. A. 2. b., provides in part that: "As a general rule, a person should be informed of the accusation against him within 48 hours after he is placed in confinement. Pretrial confinement in excess of thirty (30) days will be permitted only when approved in each instance by the officer exercising General Court-Martial jurisdiction over the command which ordered the investigation of the alleged offenses."

was on trial." No one seemed at all concerned with the fact that during the period when the Government was attempting to locate the accused's service record book, a document in its own possession (cf. United States v McKenzie, 14 USCMA 361, 34 CMR 141), no one seemed at all concerned with the fact that the accused, who may or may not have been a member of the armed forces, was confined, uncharged, in clear violation of Article 10, Code, supra, and without benefit of counsel. In my opinion, these circumstances clearly manifest a cynical disregard for the law and for the basic rights of an individual, by those specifically charged by the Congress of the United States with upholding and enforcing the law. I find this situation indefensible. The lack of explanation for it, from higher authorities, borders on contempt.

It was because of the public outcry over procedures of this nature during World War II, that this Court was created by the Uniform Code of Military Justice. Despite the fact that Article 98 was specifically included in the Code to assure that cases will be speedily processed (United States v Hounshell, supra, at page 8), I am aware of no action that has ever been taken thereunder.

In United States v Schalck, 14 USCMA 371, 373, 34 CMR 151, we said that "The issues of speedy trial and denial of due process are frequently inextricably bound together and the line of demarcation is not always clear." However, where, as here, an uncharged accused is held in confinement for seventy-two days without benefit of counsel (cf. Bitter v United States, 389 US 15, 19 L Ed 2d 15, 88 S Ct 6 (1967)), I have no hesitancy in holding that he was denied due process. See cases collated in Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Military Due Process, Speedy Trial, pages 669, et seq.; 1968 pocket part, pages 70–72.

I would reverse the decision of the board of review and order the charges dismissed.

## APPENDIX

### Chronology of Events

| Date 1968 | Events |
|---|---|
| July 10 | The accused was apprehended in Chicago, Illinois, by Federal Bureau of Investigation agents. The accused was using an assumed name and had no military identification. |
|  | Accused was turned over to military authorities at Fort Sheridan, Illinois. |
| July 11 | The accused was transferred from Fort Sheridan to Great Lakes Naval Base. |
| July 19 | The accused was transferred by plane from Great Lakes Naval Base to Camp Lejeune, North Carolina. |
|  | Accused was confined in Camp Lejeune brig. |
| July 23 | Accused officially assigned to 2d Battalion, 6th Marines, by the Personnel, Classification and Assignment Office, Camp Lejeune. |
| July 24 | The commander of the company to which the accused was assigned and the Battalion Adjutant talked to the accused at "Office Hours." |

| Date 1968 | Events |
|---|---|
| | The Battalion Commander appointed Captain L. J. Harper to investigate the charge against the accused. The accused's service record and correct service number were not available at that time. |
| | Captain Harper was advised by the Battalion Legal Officer to defer his investigation until the service record was procured. |
| July 28 | The accused was informed of the charges against him as provided by paragraph 32f(1), Manual for Courts-Martial, United States, 1951. |
| July 30 | The Battalion Commander wrote to the Commanding General of the Division to inform him of the accused's confinement, "the delay in the case," and the anticipated date of trial. |
| | The accused's service record book was requested from Headquarters, Marine Corps. |
| August 5 | Marine Corps Headquarters advised there was "no record" for the accused. (It may be fairly inferred from the evidence that the search was predicated upon the accused's service number as it was obtained from the FBI agent who apprehended the accused. The number was listed as 2127105; in fact, the accused's number was 2127015.) |
| | At this time, the Battalion was "in process of building up and training," in preparation for departure from the country. It was designated Air Alert Battalion, which apparently "involved committments [sic]" beyond those entailed in normal operations. The designation was in effect for twenty-nine days. |
| August 14 | The Battalion sent a message to Marine Corps Headquarters providing the accused's correct service number and requested a "skeleton" service record book for the accused. (There is no indication as to the source from which the correct number was obtained.) |
| August 20 | Marine Corps Headquarters message was received indicating that Headquarters had no file whatever on the accused and efforts were being made to locate a file at the records storage facility at St. Louis, Missouri. |
| September 2 | Consideration was given to proceeding without the accused's record book, but the idea was dropped. |
| September 3 | The Division Legal Inspector was asked to assist in location and procurement of the accused's record. He called Marine Corps Headquarters twice. On the second call he learned from a Sergeant that he had personal knowledge the accused was a member of the Marine Corps. |

| Date | Events |
| 1968 | |
| --- | --- |
| September 5 | The Division Legal Inspector telephoned the records storage facility at St. Louis in an effort to locate the accused's record. |
| September 6 | The Division Legal Inspector conferred with the Battalion Legal Officer and the appointed Investigating Officer about the absent record. |
| | Counsel was appointed for the accused, but he was not notified of the appointment until September 20. |
| September 9 | The Division Legal Inspector called Marine Corps Headquarters and the St. Louis record center about the accused's file. He was advised the accused's record book was found at the storage center. (From the September 12 entry, it may be inferred that he was also informed the record would be sent to Marine Corps Headquarters.) |
| September 12 | The Division Legal Inspector telephoned Marine Corps Headquarters to request expeditious transmission of the accused's service record book. |
| | About this time, a request was made for an affidavit from the FBI agent who had apprehended the accused. The request had "to go through Washington." |
| September 18 | The St. Louis records center sent the accused's record to Headquarters Marine Corps. |
| | The Battalion prepared a formal Charge Sheet on the basis of the information it now had on the accused. |
| | Office hours were held and the Charge Sheet was turned over to the Investigating Officer. He called the Division Legal Inspector to ascertain whether the service record book had been received and was advised that it had not yet come in. |
| September 20 | Defense counsel was notified of his appointment. Marine Corps Headquarters forwarded the accused's service record book to Camp Lejeune. Attached to the book was a sworn Charge Sheet prepared in November 1966 and received that month by Marine Corps Headquarters. See Manual for Courts-Martial, United States, 1951, paragraph 68c. |
| September 24 | The Division Legal Inspector telephoned the FBI Chicago office (apparently in connection with the earlier request for an affidavit). |
| | Captain Harper was relieved as Investigating Officer because of his release from active duty. Captain D. F. Rankin was appointed in his place. |

129

| Date 1968 | Events |
|---|---|
| September 25 | Defense counsel filed a motion with the Division Commander on the ground the accused was denied a speedy trial and that the proceedings were in violation of Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810 and 833, respectively. (It does not appear whether the Commanding General ruled on the motion.) |
| | The Division Legal Inspector again telephoned the Chicago office of the FBI. |
| September 26 | The accused's service record book was received at Camp Lejeune with the original Charge Sheet. |
| September 27 | Article 32 Investigating Officer conferred with counsel appointed to represent the Government, apparently in regard to date of hearing. |
| October 4 | FBI affidavit arrived at Camp Lejeune. |
| October 8 | Article 32 investigation held. Formal report prepared. |
| October 15 | Battalion forwarded Article 32 investigation report to Division, with a recommendation for trial by general court-martial. |
| October 18 | The Staff Legal Officer submitted pretrial advice recommending trial by general court-martial. |
| | The convening authority referred charges to trial by general court-martial. |
| | Trial counsel served a copy of the charges on the accused. |
| October 22 | Subpoenas were issued for witnesses. |
| November 5 | Trial. |