UNITED STATES, Appellee

v

KEEFE E. WINSTON, Sergeant, U. S. Air Force, Appellant

21 USCMA 573, 45 CMR 347

*Captain Robert L. Bridge* argued the cause for Appellant, Accused. With him on the brief was *Colonel George M. Wilson.*

*Captain Fred. W. Kuhn* argued the cause for Appellee, United States. With him on the brief were *Colonel Henry R. Lockington* and *Major Stark O. Sanders, Jr.*

## Opinion of the Court

QUINN, Judge:

Despite entry of a plea of guilty to a charge of unauthorized absence, the accused contends that his conviction should be reversed, and the charge dismissed, because of unreasonable delay in bringing him to trial and unjustified disregard of his requests to consult a lawyer during pretrial confinement.

The accused was granted leave by his unit at Tan Son Nhut, Republic of Vietnam, to return to the United States for the purpose of getting married. His leave expired on April 20, 1971, but he remained away without authority. On August 17, 1971, agents of the Federal Bureau of Investigation apprehended him in Richmond, Virginia, and he was confined in the U. S. Naval Station Correctional Center, Norfolk, Virginia. On October 15, he was brought to trial on a charge of unauthorized absence at Langley Air Force Base, Virginia, before a military judge, sitting as a special court-martial without court members. He moved to dismiss the charge on two grounds. First, he contended he was denied a speedy trial; secondly, he represented that for more than half the period of confinement before trial, he "was not allowed to see a lawyer." The motion was denied.

We turn first to the alleged denial of the right to consult counsel. Certain inconsistencies are apparent in the accused's testimony on the subject. For example, during cross-examination, he answered affirmatively a question which asked whether, in conversations with Seaman Thomas, his counselor at the confinement facility and the person to whom the requests were made, he was "just generally trying to find out when in the normal course of events . . . [he] would be assigned a lawyer"; at another point in his testimony, however, he asserted that about a week and a half after incarceration, and "about once a week" thereafter, he "asked [Thomas] to see about getting me a lawyer." The testimony of Senior Master Sergeant Leopard, the NCOIC in the Legal Office at Langley Air Force Base, casts a different light on these conversations.

Leopard testified that he spoke frequently over the telephone to Seaman Thomas about the accused's case. He maintained that Thomas asked only about the "disposition of charges." The accused admitted he was present with Seaman Thomas whenever Thomas telephoned Langley about the case. He testified that in these calls Thomas "wasn't asking for me to be given a lawyer," but did ask "about a lawyer." He did not know exactly what Thomas said because he "wasn't paying too much attention" as he "figured it was . . . [Thomas'] job, . . . [and] he knew what he was doing." Leopard maintained that "no specific request for an attorney as such" was received at Langley until about two weeks before trial, and then counsel was made available "within two to three days."[1]

---

1. A statement by defense counsel, in a question asked of Sergeant Leopard, indicates that he conferred with the accused on Monday, September 27;

Seaman Thomas did not testify, and no reason for his absence appears in the record. His testimony might perhaps have resolved what, on the surface, seems to be a conflict between the accused's account of repeated requests for counsel and Sergeant Leopard's testimony that no such requests were received.

Disregarding discrepancies in the accused's testimony and granting that he, in fact, desired to consult counsel, the evidence demonstrates there was no purposeful or negligent denial of any request for counsel. What appears from the evidence is that the accused and Thomas apparently did not understand each other. As he admitted, the accused never told Thomas he "wanted a lawyer" and he "didn't come out and say to get me a lawyer." He described the import of his comments as asking "when I could get to see a lawyer." There may, indeed, have been no difference in the accused's "mind," as he testified there was not, between a request to consult a lawyer and his desire to know "when . . . [he] could get to see a lawyer," but from his testimony and Sergeant Leopard's account of his conversations with Thomas, the trial judge could reasonably find that Thomas had not understood the accused, on the occasions he conferred with him, to be requesting the opportunity to consult counsel, but rather to be requesting information about the appointment of counsel in regular course. On that view of the evidence, there was no deliberate denial or negligent disregard of an expressed wish on the part of the accused to consult counsel. The situation in this case, therefore, is opposite to that in United States v Mason, 21 USCMA 389, 392, 45 CMR 163 (1972), where the evidence indicated that, on four occasions, the accused specifically and directly "informed confinement personnel that he wanted to consult with a lawyer."

Even if we assume the trial judge concluded that accused's remarks in each of his weekly meetings with Seaman Thomas amounted to a request to consult counsel, the record demonstrates the absence of any resultant prejudice to the accused. Responding to questions by the judge, the accused and defense counsel indicated that they had conferred before trial, that they had not been "restricted in any way" in their conferences, and they were not "claim[ing] that there was lack of opportunity to prepare." Although improper, denial of a request to consult with counsel while in confinement is not prejudicial if it has, as here, no discernible "effect upon the progress or the result" of accused's court-martial. United States v Adams, 21 USCMA 401, 406, 45 CMR 175 (1972).

Moving to the alleged denial of a speedy trial, it will be recalled that accused's unauthorized absence was from a unit in Vietnam. His return to military control in the state of Virginia raised a question as to whether he should, or had to, be sent back to Vietnam. A difference of opinion existed in the interested commands. To resolve the matter, a series of telegrams, beginning with one from Langley on August 18, passed between the United States and Vietnam. On September 10, U. S. Air Force Military Personnel Center, Randolph Air Force Base, Texas, in response to an appeal to it by the Commander-in-Chief, Pacific Air Force, authorized accused's assignment to Langley. However, this information was not received in the appropriate office at Langley, and, as a result, Langley transmitted another telegram on September 30, to Tan Son Nhut Air Force Base. In reply to this telegram, Langley received a telephone call from the Military Personnel Center on October 4, confirming that the accused had been "diverted and assigned to Langley." Thereupon, Langley requested the accused's records from Tan Son Nhut,

---

testimony by the accused indicates that a telephone call by Seaman Thomas to Langley on the preceding

Friday, September 24, brought about this consultation.

and on October 8, accused was formally served with a charge sheet alleging his unauthorized absence as a violation of Article 86, Uniform Code of Military Justice, 10 USC § 886.

From the chronology of events and the defense argument at trial, it is apparent that the only reasonably questionable period of inactivity in the proceedings is that between September 10, when reassignment of the accused to Langley was authorized, and October 4, when the reassignment was confirmed.[2] In United States v Ervin, 20 USCMA 97, 42 CMR 289 (1970), we observed that when "the Government has control of the procedures required to effect timely disposition of criminal charges," neither its negligence nor its good intentions will "excuse inordinate delay." Every delay, however, is not "inordinate." United States v Tibbs, 15 USCMA 350, 353, 35 CMR 322 (1965); United States v Przybycien, 19 USCMA 120, 41 CMR 120 (1969).

Here, the request for resolution of the disputed question of accused's transfer was submitted to the Military Personnel Center on September 10. From the average interval of time between telegrams reflected in the record submitted to him, the trial judge could reasonably conclude that even a most prudent person would not anticipate immediate action by the Center. As it happened, the Center decided the application on the same day it was made, but the trial judge could have found that, not anticipating an immediate decision, Langley should not be charged with negligence because it did not make immediate inquiry about Center's action. As the trial judge gave no reasons for his denial of the motion to dismiss, we do not know what period of time he thought was reasonable for Langley to wait before checking on Center's decision. If he thought that four to five days was reasonable, we

could not hold, as a matter of law, that he was wrong. United States v Przybycien, supra.

The record indicates that on September 27, Sergeant Leopard inquired about the case at the Duty Status section at Langley, which was the proper office for such inquiry. He was advised there was "no new information." It seems to us that the trial judge could properly reason that if this inquiry had been made earlier, some further period of waiting was allowable to Langley before it was obligated to act. In fact, Langley initiated the inquiry which revealed the misdelivery of Center's decision three days after Leopard's inquiry at the Duty Status section. The trial judge could have determined that this period was a reasonable waiting period. Thus, the judge could have found that the period of apparent inactivity by the Government was not twenty-three days, but fifteen or sixteen days. Although we deplore even one day of unnecessary confinement, we cannot say that, under the circumstances, this period of delay, as a matter of law, "so inordinately prolonged the period of pretrial confinement as to deprive the accused of a speedy trial." United States v Przybycien, supra, page 122. Moreover, the record demonstrates that the delay was not deliberately achieved to harass or otherwise oppress the accused. It further demonstrates the absence of any fair risk of prejudice to the accused as a result of the delay. The accused consulted with counsel on September 27, and defense counsel specifically disclaimed any interference with preparation of the defense case. See United States v Burton, 21 USCMA 112, 116, 44 CMR 166 (1971); United States v Ervin, supra, page 98. We conclude, therefore, that the trial judge did not err in denying the motion to dismiss for delay in bringing the accused to trial.

The decision of the United States Air Force Court of Military Review is affirmed.

---

2. At trial, defense counsel perceived the "extra time" in prosecution resulting from the "missing" telegram as amounting to twenty days; apparently, he was willing to credit the Government with proper procedure, as of September 30, when Langley Air Force Base initiated a telegram of inquiry.

Chief Judge DARDEN concurs.

DUNCAN, Judge (dissenting):

The majority correctly observe that the testimony of Seaman Thomas might have resolved the apparent conflict between the accused's account of repeated requests for counsel and Sergeant Leopard's testimony that no such requests were received. Since the Government did not see fit to call Thomas as a witness, Winston's testimony that he was told by Thomas that "there was nothing that he could do until he gets word from the Air Force, that when I got assigned to Langley they would assign me a lawyer," stands unrebutted on the record. Also unrebutted is the appellant's testimony that he asked to use the phone to call a civilian lawyer but was told by Thomas that he was "not allowed to use the phone."

Sergeant Leopard, noncommissioned officer in charge of the legal office, recalled receiving phone calls from Thomas approximately once a week. "The substance of the calls was as to disposition of charges." Leopard stated that no specific request for a lawyer was made during any of the calls except for the last one, at which time counsel was assigned.

Appellant, although a member of the Air Force, was confined in the U. S. Naval Correctional Center, Norfolk, Virginia. Upon entry he was informed that Seaman Thomas was the counselor for brig inmates. Winston testifying as to his understanding of Thomas' function stated, "[h]e is supposed to help you in legal matters like in obtaining a lawyer and everything like that." He initially spoke with Thomas about a week and a half after his arrival on August 17, 1971, and once a week thereafter. He was not given an opportunity to speak with a lawyer until after he had been confined, *without charges,* for 41 days. Charges were not preferred until October 8, 1971, 51 days after Winston was originally confined.

It is not sufficient, in my opinion, for Sergeant Leopard to state that no request to consult with counsel was received by him. The appellant was lodged in a Naval Correctional Facility at the request of the Air Force. I believe in the case before us it was the Air Force's responsibility to ensure that he was fully advised of his right to consult with counsel.[1] To the credit of the Navy, it appears that the appellant was given some such information in pamphlet form. His early consultation with Thomas who "is supposed to help you in legal matters like in obtaining a lawyer" and his weekly visits thereafter, reasonably manifest his desire to receive assistance. Since Thomas was in the Navy[2] he telephonically contacted Sergeant Leopard on the appellant's behalf. The latter was apparently not at liberty to make the contact directly. It is clear from Leopard's testimony that in his opinion only a specific and unequivocal request to consult counsel will bring about consideration of providing an attorney for consultation. I believe a more just rule would dictate that any language or pattern of action by a confined person from which it can be reasonably determined that he wished legal consultation is a proper request. Clearly, Winston's conduct here satisfies such a requirement.

While the authorities at Langley originally acted promptly in requesting disposition instructions from Winston's assigned unit in Vietnam, the Air Force command in the Pacific was in disagreement over whether the appellant would be returned to Vietnam or reassigned to Langley. As Sergeant Leopard testified, "it was a battle between Tan

---

1. In United States v Przybycien, 19 USCMA 120, 122, 41 CMR 120 (1969), footnote 2, states:

". . . It is appropriate, therefore, to give a prisoner in confinement for more than a brief period specific advice as to his right to consult an attorney and right to pre-pare for trial. Cf. Bitter v United States, 389 US 15, 19 L Ed 2d 15, 88 S Ct 6 (1967)."

2. The appellant testified that Thomas "kept telling me that he don't know how the Air Force [w]orks and all this kind of stuff."

Son Nhut and PACAF as to whether or not they were going to reassign him to this station for disposition." Until the latter event occurred Langley was without authority to institute charges and, as a general procedure, counsel is not *appointed* until charges are preferred, according to Sergeant Leopard. While the "battle" raged, the appellant had the ineffective assistance of only the brig counselor, Thomas. As this Court said in United States v Przybycien, 19 USCMA 120, 122, 41 CMR 120 (1969), footnote 2, "[t]he brig counselor, however, is no substitute for a lawyer."

In United States v Mason, 21 USCMA 389, 399, 45 CMR 163 (1972), I have set forth at length my views on the subject under consideration and need not restate them. Suffice it to iterate:

". . . I would find that four unsatisfied requests for consultation with counsel while confined for forty-nine days without charges having been preferred is so fundamentally unfair that the resultant impact is unconscionable, and fundamental fairness requires dismissal."[3]

I do not agree with my brothers that *Mason* can be factually distinguished from the case at bar. While in confinement, Mason on four separate occasions informed confinement personnel that he wanted to consult with a lawyer and to be informed of the charges against him. In this case, Winston, on a weekly basis, attempted through the brig counselor to gain the services of a lawyer for counseling purposes. After he was there over 30 days, Thomas told him to start coming in every day. Sometimes in lieu of a personal visit he

". . . put in a chit. . . . [A] counsel request that I wanted to go over [to Langley] and see him. . . . I asked to see about getting me a lawyer. . . . He would call over there and talk to Sergeant Leopard or if Sergeant Leopard wasn't there he wouldn't talk to nobody. One time he called and talked to the Colonel; that was the time I got over to see a lawyer."

I find it significant that Winston was afforded an opportunity to consult with legal counsel only after Thomas called Colonel Rutherford, the Staff Judge Advocate at Langley, and at a time when Langley was still unaware of Winston's reassignment to that facility. Had it not been for Thomas' persistence, counsel may not have been provided until after charges had been filed.

I would reverse the decision of the Court of Military Review and order the Charge and its specification dismissed.

---

3. Judge Quinn concurred in the result in United States v Mason, 21 USCMA 389, 399, 45 CMR 163 (1972), ". . . because the circumstances, including the frustration of the accused's efforts to consult counsel, demonstrate, in my opinion, 'willful, purposeful, vexatious . . . (and) oppressive delay by the Government.' United States v Brown, 13 UCMA 11, 14, 32 CMR 11 (1962); see also United States v Callahan . . . [10 USCMA 156, 27 CMR 230 (1959)]; United States v Parish, 17 USCMA 411, 416, 38 CMR 209 (1968)."