UNITED STATES, Appellee

v

CARL V. MARSHALL, Private U. S. Army, Appellant

No. 26,821

August 10, 1973

*Captain Richard M. Evans* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Captain Denis E. Hynes,* and *Captain J. Houston Gordon.*

*Captain James T. Harper* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III,* and *Captain Merle F. Wilberding.*

## OPINION OF THE COURT

DARDEN, Chief Judge:

This case, which results from an offense that occurred after our decision in United States v Burton, 21 USCMA 112, 118, 44 CMR 166, 172 (1971), tests the meaning of this language from the opinion in that case:

> For offenses occurring after the date of this opinion . . . in the absence of defense requests for continuance, a presumption of an Article 10 violation will exist when pretrial confinement exceeds three months. In such cases, this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed. [Footnote omitted.]

At the trial of this case, the accused moved to dismiss all charges and specifications because of his contention that he had been denied a speedy trial. After considering a chronology of the processing of the case and the testimony of several witnesses, the military judge denied the motion.

■ The accused was placed in pretrial confinement at Fort Ord, California, on February 23, 1972, after having been apprehended and apparently confined at Fort McArthur, California, on February 18. The case was referred to trial on June 8 and the trial began on June 9, but evidence on the merits was not heard until June 23 because the trial counsel had not arranged for the presence of witnesses. Hence the *Burton* presumption attached, and, after the defense raised the issue, the Government had the heavy burden of showing diligence.

At the Article 39(a) session requested by the defense to litigate the issue, the Government, in an attempt to show diligence, introduced a chronology and the testimony of Staff Sergeant Dersan, Captain Rucker, and Chief Warrant Officer Kane.

Sergeant Dersan testified that part of the delay between February 23, when the accused was placed in pretrial confinement at Fort Ord, and March 21, when the charges were re-preferred, resulted because the statements of witnesses were not forwarded with the charge sheet and the witnesses had in the meanwhile been reassigned to other organizations at Fort Ord. Captain Rucker, the courts and boards officer, testified that although he had advised the accused's unit commander about the correct form in which the charges should be prepared, the charges were incorrect when Captain Rucker received them on March 8. The Article 32 investigation was not completed and forwarded to the officer exercising general court-martial jurisdiction until April 19.

The second substantial period of delay was from April 19, when the case was received in the Office of the Staff Judge Advocate, to June 8, the date of the reference to trial. Chief Warrant Officer Kane, the administrative officer in the Office of the Staff Judge Advocate, testified that most of this delay was attributable to the preparation of the pretrial advice. Only two trial counsel were available to prepare pretrial advices and this duty was in addition to their heavy trial responsibilities. Other causes of delay during this period were the illness of the staff judge advocate, an injury to the deputy staff judge advocate, and the convening authority's absence from the command.

■ The wording of the granted issue relates to the denial of a speedy trial in violation of the Sixth Amendment to the Constitution of the United States and Articles 10 and 33 of the Uniform Code of Military Justice, 10 USC §§ 810 and 833. But the duration of the pretrial delay in this case is hardly long enough to present a serious constitutional issue. In Barker v Wingo, 407 US 514 (1972), the Supreme Court explicated the constitutional speedy trial right by balancing interests, with particular attention to the length of the delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker* held that the lapse of more than 5 years from time of arrest to time of trial did not infringe the defendant's constitutional right, although he spent more than 10 months of this period in jail. But in United States v Burton, supra, we compared the civilian and military law on speedy trial and assumed that the Uniform Code demands a more prompt performance by the Government in bringing the accused to trial. That assumption continues.

In deciding *Burton* itself and in deciding other pre-*Burton* cases reaching us since the time of that decision, we have considered such factors as the length of delay, a demand for prompt trial by the person accused, the reason for the delay, and prejudice to the accused. See United States v Winston, 21 USCMA 573, 45 CMR 347 (1972); United States v Adams, 21 USCMA 401, 45 CMR 175 (1972); and United States v Mohr, 21 USCMA 360, 45 CMR 134 (1972). But in *Burton* itself we attempted to provide what we thought was unmistakable notice that in the future after pretrial confinement of more than 3 months the emphasis shifted to a close examination of the Government's diligence.

■ Before the Court of Military Review the Government argued that before *Burton* it was obligated to show reasonable diligence and that *Burton* did not change the burden of proof but only imposed on the Government an affirma-

**22 USCMA 433**

tive duty to explain that part of the delay which exceeded 3 months. This argument misses the point of the *Burton* ruling, which was to establish a standard that included allowances for the several necessary pretrial stages through which a proceeding must progress. Under *Burton,* the Government may still show diligence, despite pretrial confinement of more than 3 months, in such cases as those involving problems found in a war zone or in a foreign country, United States v Prater, 20 USCMA 339, 43 CMR 179 (1971); United States v Mladjen, 19 USCMA 159, 41 CMR 159 (1969), or those involving serious or complex offenses in which due care requires more than a normal time in marshaling the evidence, or those in which for reasons beyond the control of the prosecution the processing was necessarily delayed.

■ The delays that occurred in the instant case were not for the extraordinary reasons necessary to extend the 3-month allowance in *Burton.* Defects in the drafting of charges, failure to secure statements of witnesses before their reassignment to other organizations at the same base, too few officers assigned to the preparation of the pretrial advice, illness or injury of the staff judge advocate and his assistant, and absence of the convening authority are all conditions or circumstances for which the Government is responsible and for which allowance was made in the establishment of the 3-month standard.

■ Another aspect of this subject deserves comment. Article 33 of the Code requires that in the case of a person held for trial by general court-martial, the commanding officer must forward the charges, the report of the Article 32 investigation, and allied papers to the officer exercising general court-martial jurisdiction within 8 days after the accused is ordered into confinement. If this is not practicable, the commanding officer must report in writing to the convening authority the reasons for the delay. This 8-day reference evidences a congressional expectation that the Article 32 investigation and actions associated with it should normally be accomplished within 8 days, with an escape clause if the complicated nature of the investiga-

tion makes such speed impractical. In this case the 8-day limitation was substantially exceeded, but instead of providing an explanation of the longer period, the commanding officer forwarded only a list of dates on which the several stages were completed. This scarcely qualifies as an explanation of the type Article 33 contemplates.

Despite the indication in the *Burton* opinion that dismissal of charges was the appropriate remedy when an Article 10 violation occurs, appellate government counsel argue that the dismissal to which Article 10 refers is a dismissal by the commander without prejudice to further proceedings and that this remedy should not be applied by appellate courts in a way that bars further proceedings. According to this view, Article 10 contemplates dismissal before convening of the court and once the trial begins, the remedy of dismissal under Article 10 is superseded by the trial procedures. At this point, the argument continues, Article 59(a) controls and a dismissal is warranted only if actual prejudice to the accused's substantial rights is found.

Since a violation of the *Burton* standard normally will involve a delay not long enough to constitute a constitutional violation, we agree with government counsel that the decision in Strunk v United States, 93 S Ct 2260 (1973), does not necessarily control the remedy for a violation of Article 10. We have also considered the possibility of testing an Article 10 violation for prejudice in pre-*Burton* cases.

■ In United States v Hubbard, 21 USCMA 131, 44 CMR 185 (1971), without distinguishing between a deprivation of the constitutional right to a speedy trial and the requirements of the Uniform Code of Military Justice, a majority of the Court concluded that credit for the pretrial confinement served by an accused who had been denied his right to a speedy trial was not an appropriate remedy. But the *Burton* opinion itself gives notice that the remedy to be applied is dismissal of the charges by the appellate court. While Article 10 as construed by this Court demands more expeditious military trials than does the Constitution, this more rigorous require-

ment is not in itself enough to justify application of a remedy different from the one the Supreme Court has found appropriate for violations of the constitutional right. Article 10, as mentioned above, does appear to be directed initially to the commander in the field. But if the commander does not apply the guidelines this Court has promulgated, appellate review avails nothing if the appellate court does not direct the relief the commander should have granted.

■ At the risk of redundancy we iterate that when a *Burton* violation has been raised by the defense, the Government must demonstrate that really extraordinary circumstances beyond such normal problems as mistakes in drafting, manpower shortages, illnesses, and leave contributed to the delay. Operational demands, a combat environment, or a convoluted offense are examples that might justify a departure from the norm. Absent these or similar circumstances, the delay beyond 90 days cannot be justified by a showing that it was caused by difficulties usually encountered in the processing of charges for trial. As no unusual factors were presented in this case, the Court of Military Review erred in affirming the findings and sentence.

The decision of the U. S. Army Court of Military Review is set aside. The charges and their specifications are ordered dismissed.

Judges QUINN and DUNCAN concur.