UNITED STATES, Appellee

v

ALFRED A. HAWES, Private, U. S. Marine
Corps, Appellant

18 USCMA 464, 40 CMR 176

*Captain Frank A. Nelson,* JAGC, USN, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Kenneth F. Ripple,* JAGC, USNR.

*Captain Charles E. Patterson,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Colonel C. R. Larouche,* USMC.

## Opinion of the Court

QUINN, Chief Judge:

Before entering a plea of guilty to unauthorized absence from his unit at Camp Pendleton, California, for approximately eleven months, the accused moved to dismiss the charge because he was denied a speedy trial. The motion was denied, and the correctness of the ruling is the subject of this appeal.

At the hearing on the motion, the parties stipulated to a chronology of the proceedings in the case. The chronology, supplemented by other matters included in the evidence before the law officer, is set out in the Appendix to this opinion.

No useful purpose will be served by review of the numerous cases dealing with speedy trial. Each case necessarily depends upon its own facts. United States v Goode, 17 USCMA 584, 586, 38 CMR 382. The interval of time between initial confinement in connection with the charge and the date of trial is not the sole determinant of the issue, but only one of the factors to be considered. Compare United States v Parish, 17 USCMA 411, 38 CMR 209, with United States v Callahan, 10 USCMA 156, 27 CMR 230.

Appellate defense counsel describe unauthorized absence as "the easiest military offense to process" and contend that an interval of one hundred and six days between confinement and trial "cannot be condoned." Viewed grossly, the period appears extended for the nature of the offense, but considering the proceedings had, and allowing for the vagaries of variables in fluid situations, we are satisfied the accused was not denied a speedy trial.

The initial period of thirty-four days from December 20, 1967, to January 22, 1968, which includes the accused's apprehension by the Federal Bureau of Investigation in Fallon, Nevada, his transfer to Camp Pendleton, and preparation and submission of the Article 32 investigation report, does not impress us as being inordinately or unjustifiably prolonged. Similarly, the various proceedings in the case during the thirty-seven-day period from February 27 to April 3, the date of trial, were timely and reasonably expeditious. That leaves the middle period of thirty-five days between January 23 and February 26, for consideration. Apparently, the case file was lost or misplaced in that period.

Losing or misplacing a case file is always cause for judicial and administrative concern. It is especially intolerable if it may result in unnecessary pretrial confinement of the accused. We are not inclined to excuse or minimize the event. However, we are not persuaded by defense counsel's postulate that the "durance vile" of accused's confinement during this period constituted Government oppression or resulted in prejudice to the accused. See Solomon v Mancusi, — F2d — (CA 2d Cir), 5 Criminal

Law Reporter 2226, decided May 5, 1969.

The record leaves no doubt that the pause in the proceedings was not the result of indifference or disregard of the obligation to process the charges as speedily as possible, but rather to the tactical operations of the accused's battalion. Indeed efforts were made to locate the papers. These were not successful, but they indicate the case was not forgotten or ignored. The accused suggests other measures that could have been taken to find the misplaced or lost papers. Had some of these measures been utilized, it is possible the papers might have been located sooner, but, as the accused's March 5 offer to plead guilty indicates, earlier recovery of the papers would not necessarily have brought the case to trial much before the day it was actually tried. On the contrary, the offer implies that the accused was not ready for trial unless his proposed limitation on the sentence was accepted by the convening authority.

A reading of the transcript of the Article 32 investigation leaves the distinct impression that the accused was not anxious to return to duty. It is fairly inferable that he preferred confinement to release to his unit during either its training exercise or its transfer to Vietnam. Throughout the period in issue, the accused was represented by counsel, but there is no indication he or his counsel made application for his release from confinement so that he might rejoin his organization. The March 5 offer to go to trial "immediately" is far removed from a protest against continued confinement or a plea for speedy disposition of the case. It is noteworthy that notwithstanding the certainty of conviction, which is presented as one of the reasons for the unreasonableness of the period of preparation, the accused did not submit the offer to plead guilty until his unit was transferred to Vietnam and he was assigned to the Military Police Company.

466

On the record before us, we are satisfied there was no oppressive or unreasonable delay in prosecution. We are also satisfied the accused was not prejudiced by reason of the time taken to bring the charge against him to trial.

Part of the accused's argument on the motion to dismiss adverted to alleged violations of Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810 and 833, respectively. Article 10 requires that on arrest or confinement "immediate steps" be taken to inform the accused of the "specific wrong of which he is accused and to try him or to dismiss the charges and release him." We have already indicated that satisfactory steps were taken to bring the accused to trial, and that none of the intervals of time between the various steps was so inordinately long or oppressive as to justify dismissal of the charge. The record, however, does not indicate that the accused was directly informed of the offense for which he was confined. An omission of that kind is not ground for reversal of an otherwise valid conviction if the accused is not prejudiced.

In United States v Tibbs, 15 USCMA 350, 354, 35 CMR 322, we pointed out that the purpose of the notification provision of Article 10 was to enable the accused to "consider his defense and apprise his family, friends, or counsel of his predicament to enable them to assist him by whatever means available." The Government contends that purpose was satisfied because it can be inferred from the accused's apprehension by the Federal Bureau of Investigation and transfer to the Camp Pendleton brig that he knew the reason for his confinement. The board of review drew that inference. We need not, however, determine whether the circumstances justify the inference. We perceive no prejudice to the accused.

The record demonstrates the accused never contemplated a defense to the charge, and before ▮▮▮ and at trial he affirmatively opposed the presentation of mitigating matter that might have resulted in his retention in the service. The record further indicates he was specifically advised to notify relatives of his predicament and that counsel was appointed for him to assist him while the charge was still under investigation. In these circumstances, we cannot regard "a departure from the strict letter of the law" as a denial of due process. *Tibbs,* supra, at pages 354, 355.

As to Article 33, we may, as we did in the *Tibbs* case, assume the Article requires that within ▮▮▮ in eight days of the time the accused is placed in confinement a report be made to the general court-martial authority as to the status of the charge. The Article does not prescribe dismissal of the charge for failure to submit the report. United States v Callahan, supra, at page 158. It certainly does not mandate reversal of conviction in the absence of prejudice for failure to submit the report. Here, as in *Tibbs,* at page 357, the record of trial indicates "clearly the impracticability of forwarding the charges and allied papers to the general court-martial authority within eight days of the accused's confinement." We conclude, therefore, that the law officer's denial of the motion to dismiss was correct.

The decision of the board of review is affirmed.

Judges FERGUSON and DARDEN concur.

## APPENDIX

### Chronology of Events

| Date | Events |
|---|---|
| **1967** | |
| December 20 | Apprehended by Federal Bureau of Investigation at Fallon, Nevada. |
| December 21 | Confined at MB Brig, NAD, Hawthorne, Nevada. |
| December 23 | Transferred under guard from Hawthorne to Base Brig, Camp Pendleton, California (accused's home station). |
| **1968** | |
| January 5 | Records of accused's unit corrected to delete earlier "mark of desertion." |
| January 9 | Formal Charge Sheet prepared by first sergeant of accused's unit. |
| January 10 | Charge Sheet sworn to by first sergeant. |
| | Accused informed of sworn charge. |
| | Sworn Charge Sheet received at 1:00 p.m., by Battalion Commander as officer exercising summary court jurisdiction. |
| | Investigation of charge under Article 32, Uniform Code of Military Justice, ordered. |
| January 10–15 | Qualified counsel appointed to represent accused. |
| | Article 32 Investigating Officer arranged with counsel for hearing. |

| | |
|---|---|
| January 18 or 19* | Hearing held by Article 32 Investigating Officer. |
| January 22 | Investigation report recommending trial by general court-martial hand carried by Investigating Officer to Battalion Legal Section. |
| January 22–27 | Battalion engaged in training exercises in Nevada. |
| January 30 | Military Justice Officer initiated inquiry to determine "progress" on Article 32 Investigating Officer's Report. He learned the report was "misplaced." |
| February 12 | Further inquiry by Military Justice Officer regarding Article 32 Investigating Officer's Report revealed the report had been forwarded to Regimental Headquarters. |
| February 13–18 | The accused's Division was ordered to Vietnam. Troop transfer accomplished in this period. |
| | Division Legal Officer initiated inquiry to locate Article 32 Investigating Officer's Report. He and the Military Justice Officer made "repeated phone calls," but the whereabouts of the report remained undetermined. |
| February 26 | The accused was transferred on record to Military Police Company, Headquarters Battalion, 5th Marine Division (–) (Rein). |
| February 27 | Commanding Officer, Military Police Company, forwarded, through channels, the Article 32 Investigating Officer's Report with the recommendation for trial by general court-martial. |
| March 5 | Defense Counsel advised Military Justice Officer that he would be willing to proceed "immediately" to trial if the Convening Authority would agree to limit the period of confinement. (Apparently, no reply was made to this proposal.) |
| March 6 | Article 32 Investigating Officer's Report received at Battalion Headquarters Legal Office. |
| March 11 | Commanding Officer, Headquarters Battalion, forwarded the charge and report of the Article 32 investigation to Commanding General, 5th Marine Division (–) (Rein), with recommendation for trial by general court-martial. The letter of transmittal indicated the accused was provided with a copy of the substance of the testimony at the investigation and that the officer exercising Article 15 jurisdiction had taken steps to insure the accused's parents were informed he was facing trial by court-martial. |
| March 13 | Division Legal Officer received the papers in the case for advice under the provisions of Article 34, Uniform Code of Military Justice. |

---

* Most record references to the Article 32 investigation indicate that it was held on January 18, but the transcript of the hearing is dated January 19.

| | |
|---|---|
| March 14 | Draft of pretrial advice under Article 34 is considered by the Assistant Staff Legal Officer. |
| March 19 | Staff Legal Officer submitted pretrial advice to the Commanding General recommending trial by general court-martial. |
| March 21 | Commanding General referred case to trial by general court-martial. |
| March 22 | Trial Counsel served charge upon the accused. |
| March 23–April 3 | Trail Counsel engaged in "getting" the law officer and the court members "together" for trial. |
| April 3 | Trial. |