UNITED STATES, Appellee

v

ROBERTO MARIN, Private, U. S. Marine Corps, Appellant

20 USCMA 432, 43 CMR 272

*Captain Paul A. Reichs*, USMCR, argued the cause for Appellant, Accused.

*Captain John J. Reilly*, USMCR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever*, USMC, and *Commander Michael F. Fasanaro, Jr.*, JAGC, USN.

## Opinion

DARDEN, Judge:

Tried before a general court-martial at Camp Pendleton, California, on a charge of desertion, the appellant was convicted of absence without leave and sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for seven months. Intermediate appellate review left the findings and sentence unchanged. This Court granted review to consider the appellant's complaint that he was denied his right to a speedy trial.

During the early moments of his trial, Marin unsuccessfully moved for dismissal of the charge on the above ground. A supporting stipulation of fact attached to the record as an appellate exhibit shows that Marin was apprehended by civilian authorities in Brooklyn, New York, on August 28, 1969, and confined in the Riker Island Jail until September 6, 1969. He was then transferred to the Brooklyn Navy Yard and confined in the Naval Brig until transferred to the Marine Corps Base Brig, Quantico, Virginia, on September 18, 1969. On October 15 he was transferred to and confined in the brig at the Naval Training Center, Great Lakes, Illinois. On October 23, 1969, he was sent to the Camp Pendleton Brig, where he remained until January 22, 1970, awaiting trial.

This chronology shows further that while confined on September 6, 1969, Marin was informed of the offense of which he was suspected; that on November 14, 1969, formal charges were preferred and he was so informed; that on November 13, 1969, an Article 33 report and a request for counsel were forwarded to the office of the staff judge advocate; that on December 3, 1969, both the report and request for counsel were received by the staff judge advocate's office; that on December 5, 1969, counsel was informally designated and a counsel letter prepared; that on December 19, 1969, the accused submitted a waiver of Article 32 investigation to the parent organization; that the commanding general approved a request from Marin's unit for extended confinement of him; that on December 31, 1969, the Commanding Officer, Student Company,

**433**

Schools Battalion, forwarded a recommendation for trial by general court-martial; that the recommendation for trial was received by the office of the staff judge advocate on January 5, 1970, with staff judge advocate advice being prepared four days later; and that on January 12, 1970, the commanding general referred the case for trial by general court-martial, with trial beginning January 22, 1970.

Trial defense counsel's concern about lack of speedy trial centered on the delay in moving Marin to Camp Pendleton, the delay attending the forwarding of pertinent papers to the office of the staff judge advocate at Camp Pendleton, and the total time required to bring the appellant to trial. At the trial the processing of this case at Camp Pendleton itself was unchallenged.

Like a dissenting member of the United States Navy Court of Military Review, appellate defense counsel argues that the basis for denial of the appellant's motion below was insufficient. He asserts that the Government described only *what* occurred without explaining *why* the events consumed the stated amount of time. On the other hand, appellate Government counsel and the majority of the United States Navy Court of Military Review take the position that no "purposeful, vexatious or unreasonable delay" occurred in this case. They conclude that the appellant was the victim of neither error nor prejudice.

Judge Barian, the dissenting member of the Court of Military Review, pointed out that the Article 33 report did not contain a report in writing to the officer exercising general court-martial jurisdiction of the reasons for the delay in the case. We agree with his thought that in many instances a bare chronology is unhelpful to reviewers who must pass on speedy trial issues. Although accounting for each day that elapses between significant events in a court-martial proceeding may not be practical in an Article 33 report, each official in the chain of communication ought to explain obvi-

**434**

ous prolongations of the time attributable to the step for which he is responsible.

Fifty-seven days elapsed between this appellant's apprehension and his return to California. Appellate defense counsel vigorously assails this slowness, which the Government attempts to explain by ascribing it to procedures then in effect for consolidating absentees and returning them to the west coast by Government-operated air transport over which the Marine Corps had little control.

Except for this period and the delay between the forwarding of the Article 33 report and its receipt at the office of the staff judge advocate, the rest of the one hundred forty-seven-day interval between apprehension and trial seems to be reasonably accounted for in the chronology.

A person who has remained beyond military control for almost a year can scarcely expect that immediately upon his apprehension officials will abandon all other activity to arrange special transportation to return him to the base he left. After a generous margin of understanding for the policies prescribing consolidated movements and use of Government transportation not under Marine Corps control, we still do not understand why the movement of this appellant from Brooklyn to California consumed fifty-seven days. Similarly, we are perplexed that the charges forwarded on November 13 were received at the office of the staff judge advocate on the same base not until twenty-one days later. Satisfactory explanations for both of these periods of delay may exist; if so, the explanations should have been furnished in compliance with the requirement of Article 33 that if it is not practicable for a commanding officer to forward charges within eight days after an accused is confined he shall report in writing to the convening authority the reasons for the delay.

The normal difficulty in appellate review of speedy trial issues is accentuated when convening authorities fail to require commanding officers to re-

port in writing the reasons why charges are not forwarded within eight days of the accused's arrest or confinement, as Article 33 requires. We are reluctant to reverse otherwise faultless convictions because of a failure to comply with Article 33. Excusing the guilty because an official has not discharged this statutory duty is an awkward way of striving for justice. But the unsatisfactory nature of the remedy does not foreclose dismissal in egregious cases. United States v Goode, 17 USCMA 584, 38 CMR 382 (1968); United States v Parish, 17 USCMA 411, 38 CMR 209 (1968).

Speedy trial issues vary and each must be determined on the circumstances peculiar to it. United States v Hawes, 18 USCMA 464, 40 CMR 176 (1969). Similarly, each ruling of the military judge alleged to be erroneous must be " 'separately analyzed.' " United States v Freeman, 15 USCMA 126, 129, 35 CMR 98 (1964). The otherwise steady progression toward prosecution of the offense satisfies us that the delays in this case did not hinder the appellant in the preparation or the presentation of his case. Despite the delay in returning the appellant to his unit, he was immediately advised after apprehension of the offense of which he was suspected. He was furnished counsel more than a month before trial and that counsel did not urge any acceleration of the proceedings. During the trial the appellant convinced the court he intended to return to military control and thus avoid conviction for desertion. In doing so, he conceded that his absence was unauthorized. Accordingly, the delay in bringing him to trial did not affect his preparation for defending against the offense charged or the lesser included offense of which he was convicted. United States v Tibbs, 15 USCMA 350, 35 CMR 322 (1965); United States v Hawes, supra; United States v Przybycien, 19 USCMA 120, 41 CMR 120 (1969); United States v Mladjen, 19 USCMA 159, 41 CMR 159 (1969).

The record also demonstrates that the military judge considered the de-lays in this prosecution in his determination of an appropriate sentence. When trial defense counsel asked the military judge to consider pretrial confinement in determining punishment, the latter replied:

"MJ: In imposing sentence, Private Marin, I want you to know that I am giving full consideration to the length of time that you have spent in pretrial confinement and it is my duty as military judge of this court to inform you that this court sentences you to be discharged from the service with a bad conduct discharge, to forfeit all pay and allowances, and to be confined at hard labor for seven months."

Since the delays that occurred here did not handicap the appellant in preparing his defense, and since the military judge considered the length of pretrial confinement in deciding an appropriate sentence, we affirm the decision of the Navy Court of Military Review.

Chief Judge QUINN concurs in the result.

FERGUSON, Judge (dissenting):

I dissent.

I believe that the dissenting member of the Court of Military Review struck the proper note in this case when he wrote:

". . . While the stipulated chronology[1] describes *what* occurred, the chronology does not explain why it occurred when it did. What, for example, is the explanation for the delay between 13 November and 3 December 1969. There may have been valid reasons for this and other periods of delay. In my opinion, the trial judge had insufficient basis to deny the accused's motion at the trial. Based on the contents of the record before us, I would dismiss the charge."

The question of lack of speedy trial has occupied the attention of this

[1] See Appendix.

**435**

Court on all too many occasions. See generally cases cited in Tedrow, Digest, Annotated and Digested Opinions, U. S. Court of Military Appeals, Military Due Process, Speedy Trial, pages 669–672. In most instances, the issue could have been avoided by the simple expedient of compliance by the Government, with the specific requirements of Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810 and 833. Failure to do so has often necessitated our invoking the extraordinary remedy of reversal of conviction and dismissal of the charges, as that is the only available solution for this error. See discussion in United States v Parish, 17 USCMA 411, 38 CMR 209 (1968), and citations of authority therein.

In this case the accused was apprehended by civilian authorities in Brooklyn, New York, on August 28, 1969, and released to military authorities on September 6th. He was not returned to Camp Pendleton until October 23d. Trial was held at Camp Pendleton on January 22, 1970—one hundred and forty-seven days after his arrest. The chronology of activity reflects *what* occurred but not why it occurred.

The accused was charged with one specification of desertion, terminated by apprehension, but was found guilty only of being absent without leave, after trial by military judge alone. The Government's *only evidence* in the case was the introduction of an extract copy of a portion of the accused's service record book (Prosecution Exhibit 1), which reflected the absence and the apprehension. Defense counsel stipulated as to its authenticity and had no objection to its admission. Under these circumstances, what reasonable explanation could there be for the Government's failure to try this simple offense until one hundred and forty-seven days after the accused was placed in confinement?

In the instant case, *prima facie* inordinate delays are evident from the chronology, as my brothers concede. The Government's failure to render an explanation for these delays has resulted not in a record which reflects "[b]rief periods of inactivity" (United States v Tibbs, 15 USCMA 350, 353, 35 CMR 322 (1965)), but in a record which reflects constant unexplained delays in disposing of criminal charges. The burden is on the Government to establish reasonable diligence in bringing a case to trial. United States v Brown, 10 USCMA 498, 28 CMR 64 (1959). In United States v Keaton, 18 USCMA 500, 40 CMR 212 (1969), this Court unanimously reversed that accused's conviction for absence without leave, despite his plea of guilty, when it appeared that the Government failed for almost three months to take any action to obtain custody of the accused who was being held in a Florida jail as a military absentee. In doing so, we rejected the Government's explanation that its failure to act was based on the belief that since the accused was then under bail on charges brought by the State of Florida, there was no obligation to inquire whether he could be returned to his unit at Fort Gordon, Georgia, for trial, prior to the disposition of the State charges. In United States v Parish, supra, the delay in bringing the case to trial was allegedly due to the inexperience of the officers involved. As we said in *Parish*, at page 417:

"As to the inexperience of the officers involved, we do not believe this is a legally or factually sufficient explanation. Whether they thought they were doing their job is irrelevant. The plain fact of the matter is that the delay occurred."

Since no valid reasons for the delays in this case were advanced by the Government at trial, the Government's burden of justifying the delays was not met, and, in my opinion, the trial judge erred in denying the motion of defense counsel to dismiss the charges for lack of speedy trial. United States v Brown, United States v Parish, United States v Keaton, all supra.

I would reverse the accused's conviction and order the charges dismissed.

## APPENDIX

### "STIPULATION CONCERNING CHRONOLOGY AND RELATED MOTIONS

### CASE OF:

## UNITED STATES v. MARIN

1. It is hereby stipulated and agreed by and between the prosecution and the defense, with the express consent of the accused, Private Roberto MARIN, 229 27 66, U. S. Marine Corps, that the following chronology is an accurate representation of the principal procedural steps involved in bringing this case to trial. The following chronology is not intended to be an exhaustive detailing of all processing events, concurrent case load or other relevant factors, but is intended merely to present the highlights of pretrial procedure.

28 Aug 69 Accused apprehended by civilian authorities, Brooklyn, New York

28 Aug 69–6 Sep 69 Accused confined Riker Island Jail, Brooklyn, New York

6 Sep 69–18 Sep 69 Accused confined Brooklyn Naval Brig, Brooklyn Naval Yard, New York

18 Sep 69–15 Oct 69 Accused confined Base Brig, Quantico, Virginia

15 Oct 69–23 Oct 69 Accused confined NTC Great Lakes, Illinois

23 Oct 69–present Accused confined Base Brig, MCB Camp Pendleton, California

/s/ Robert Marin
ACCUSED

22 January 1970
DATE

/s/ Douglas C. Harkin
DEFENSE COUNSEL

22 January 1970
DATE

/s/ M. E. Conway Jr.
TRIAL COUNSEL

1–22–70
DATE

6 Sep 69 Accused informed of suspected offenses when confined

14 Nov 69 Formal charges preferred and accused informed of charges against him

13 Nov 69 Article 33 report and request for counsel forwarded to OSJA

3 Dec 69 Article 33 report and request for counsel received at OSJA

5 Dec 69 Counsel informally designated

5 Dec 69 Counsel letter prepared

19 Dec 69 Accused submitted waiver of Article 32 investigation

19 Dec 69 Report of waiver submitted to parent organization

19 Dec 69 Unit submitted request for extended confinement; CG approved

31 Dec 69 CO, Student Company, Schools Battalion, forwarded recommendation for trial by GCM

5 Jan 70 Recommendation for trial by GCM received at OSJA

9 Jan 70 SJA advice letter prepared

12 Jan 70 CG referred case for trial by GCM

22 Jan 70 Trial date
/s/ Robert Marin
ACCUSED

22 January 1970
DATE

/s/ Douglas C. Harkin
DEFENSE COUNSEL

22 January 1970

/s/ M. E. Conway Jr.
TRIAL COUNSEL

1–22–70
DATE

App Exh 2."