UNITED STATES, Appellee

v

LEROY HUBBARD, Private
U. S. Marine Corps, Appellant

21 USCMA 131, 44 CMR 185

No. 24,119

December 17, 1971

Captain *F. Caldwell Bagley,* USMC (Ret.), argued the cause for Appellant, Accused.

Lieutenant *E. Perry Johnson,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was Commander *Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion of the Court

QUINN, Judge:

A military judge, sitting as a general court-martial without court members, convicted the accused of unauthorized absence and imposed a sentence extending to a bad-conduct discharge and confinement at hard labor for eight months. At trial, defense counsel moved to dismiss the charge for the Government's failure to comply with the provisions of Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810, 833. The mo-tion was denied, and the correctness of that ruling is the subject of this appeal.

On April 3, 1970, in Richmond, Virginia, Special Agents Brown and Jacobson of the Federal Bureau of Investigation apprehended the accused as an unauthorized absentee and had him confined in the Hanover County Jail, Virginia. "Just after . . . [the accused] was arrested" Agent Brown notified the Provost Marshal's office, Quantico, Virginia, of the ar-

rest and confinement. The arrest was made at an unspecified time before 11:00 p.m. Shortly before midnight, the Desk Sergeant at the Provost Marshal's office, communicated with the Armed Forces Police, Washington, D. C., regarding transfer of the accused from the civilian jail to a military facility. He was informed that "they could not go and pick" up the accused because he was "out of their area"; it was suggested that the authorities at Camp A. P. Hill, Richmond, Virginia, be requested to effect the transfer. According to a log entry, the Desk Sergeant notified the military police detachment at Camp A. P. Hill that accused was confined in the Hanover County Jail. A chronology of events admitted into evidence as a stipulation indicates that Camp A. P. Hill informed the Provost Marshal's Office, Quantico, that the Hanover jail was a proper place of confinement pending the assignment of guards for the accused's transfer, which would be "at direction of" the Commandant, Marine Corps. As far as appears from the record, no Government official acted in the matter for the next forty-seven days.

On May 20th, the Hanover County Sheriff notified the Marine Corps Recruiting Station, Richmond, Virginia, that the accused was still confined in the county jail. The next day the Recruiting Station sent a message to Commandant, Marine Corps, requesting transfer of the accused. On May 22d, the personnel office at Marine Corps Base, Quantico, Virginia, received a message from Commandant, Marine Corps, concerning the accused. On May 30th, guards escorted the accused from Hanover County Jail to the Base Correctional Center at Quantico, a distance of about seventy-five miles.

The stipulated chronology of events indicates that the accused requested release from confinement on July 23d. That request was denied on July 29th; also on the same day, a formal charge sheet was prepared. The accused was informed of the charge on July 30th,

and the case came on for trial on August 31st. There is no indication that any person having command responsibility over the accused reported in writing to the general court-martial authority, within eight days of the accused's confinement, "the reasons for delay" in the proceeding against the accused, as required by Article 33 of the Uniform Code; it must be assumed, therefore, that no such report was made. United States v Goode, 17 USCMA 584, 587, 38 CMR 382 (1968).

In pertinent part, Article 10 of the Uniform Code directs that if an accused is placed in confinement before trial "immediate steps" shall be taken to inform him of the charge and "to try him or to dismiss the charges and release him." As defense counsel observed at the trial, there was "total inactivity" on the part of the Government for forty-seven days after accused's confinement; and during the next ten days, the Government merely moved the accused from the civilian jail to the confinement facility at Quantico, a distance of seventy-five miles. The chronology of events is silent as to the reasons for the Government's inaction, and trial counsel offered no other evidence of excuse or explanation. On his own initiative, the trial judge took notice of the "tremendous administrative load . . . on people at Headquarters Marine Corps and out at Camp Pendleton." Assuming these circumstances were properly noticed, they do not necessarily suggest that the Government's failure to do anything was the direct result of the administrative work load. More importantly, during the period of his incarceration in the civilian jail, the accused came under the jurisdiction of Camp A. P. Hill, Richmond, Virginia, not Camp Pendleton, California. Consequently, even the circumstances noted by the trial judge provide no satisfactory explanation for the Government's inaction. Thus, the Government's failure to take any steps whatever in the case could have resulted from gross neglect or indif-

ference to the commands of Articles 10 and 33 of the Uniform Code.

Our reports contain numerous cases dealing with "the vexatious problem of determining the impact . . . of the failure by military authorities to comply with the provisions of Articles 10 and 33 of the Code." United States v Parish, 17 USCMA 411, 412, 38 CMR 209 (1968). Resolution of the problem in a particular case "necessarily depends upon . . . [the] facts" in that case. United States v Hawes, 18 USCMA 464, 465, 40 CMR 176 (1969). Eleven cases are urged upon us by the parties as providing helpful guidelines in consideration of the facts in this case. We need not canvass all these cases or others that readily come to mind.

In United States v Parish, supra, the accused was confined on August 23d. Investigation of the alleged offenses continued while he was in confinement. The final report of the investigators was submitted to the accused's commanding officer on October 5th, and on October 12th, the accused was informed of two of the three charges upon which he was eventually arraigned. He was tried 134 days after he was placed in confinement. In our consideration of the steps taken by the Government, we were "primarily concerned with the period of time between the confinement and the original reading of the charges—fifty days." Id., page 414. The Government sought to excuse its failure to comply with provisions of Articles 10 and 33 during that period on the ground that the responsible officials were inexperienced and lacked knowledge of the necessity for expeditious action. We concluded that the proffered explanation was not "legally or factually sufficient." Id., at page 417.

A stipulated chronology of events in United States v Goode, supra, indicated that the accused was confined at Fort Huachuca, Arizona, on No-

vember 7, 1966. After his confinement, the Government was apparently engaged in getting his service record "in order." The charges were read to him on January 31, 1967. On the appeal to this Court we considered the validity of a trial ruling denying the accused's motion to dismiss the charges for failure to comply with Articles 10 and 33. We noted that the Government's action in the eighty-five days between confinement and the reading of the charges was not "in keeping with the spirit of the law, much less the letter." Id., at page 587.

In United States v Keaton, 18 USCMA 500, 40 CMR 212 (1969), the accused was, as here, apprehended by agents of the Federal Bureau of Investigation as a military absentee and confined in a civilian jail. Confinement took place on March 27th. Military authorities were immediately notified of the apprehension and confinement, but the accused was not transferred to the military until June 25th. During that period the Government did nothing in regard to the case. Focusing on this interval of almost three months, the Court concluded that the "total inaction by the Government" was "enough for us to decide that the requirements of Articles 10, 33, and 98 of the Uniform Code were not met." Id., at page 504.

Appellate Government counsel contend that the accused was not prejudiced by the manifest violation of Articles 10 and 33 in this case because the trial judge noted that he had "cranked" into his "reasoning process" in determining the sentence "portions of the pretrial confinement . . . [he judged] should be credited"; as a result, he concluded "that confinement at hard labor should be eight months."[1] See United States v Marin, 20 USCMA 432, 434, 43 CMR 272 (1971). Congress, however, did not provide for expiation of a violation of Article 10

---

[1] The maximum confinement to which the accused was subject was one year. Since he was in pretrial confinement from April 3d to August 31st, a period of four months and twenty-eight days, he, obviously, was not credited with the total period of pretrial confinement.

by credit for illegal pretrial confinement. Rather it directed that if timely steps are not taken to try an accused in pretrial confinement the relief to which he is entitled is to "dismiss the charges and release him." See United States v Keaton, supra, page 504; United States v Goode, supra, page 588.

The decision of the United States Navy Court of Military Review is reversed. The findings of guilty and the sentence are set aside, and the charge is ordered dismissed.

Senior Judge FERGUSON concurs.

DARDEN, Chief Judge (dissenting):

I had understood recent cases to support the principle that Article 10, Uniform Code of Military Justice, 10 USC § 810, violations are to be tested for prejudice. The Court did this in United States v Parish, 17 USCMA 411, 38 CMR 209 (1968); in United States v Hawes, 18 USCMA 464, 40 CMR 176 (1969); in United States v Keaton, 18 USCMA 500, 40 CMR 212 (1969); in United States v Przybycien, 19 USCMA 120, 41 CMR 120 (1969); in United States v Pierce, 19 USCMA 225, 41 CMR 225 (1970); in United States v Mladjen, 19 USCMA 159, 41 CMR 159 (1969); and in United States v Marin, 20 USCMA 432, 43 CMR 272 (1971).

I consider *Marin* little different from this case. Marin, like Hubbard, suffered no harm in the preparation of his defense. Both records reflect compensatory sentencing action.

Although compensatory sentencing action does not excuse the failure of officials at Quantico to follow up their being notified that Hubbard was in jail and to remove him to Quantico, I still believe dismissal of charges is a drastic and unsatisfactory remedy. See United States v Keaton, supra. It frees offenders against military law but it does not punish those responsible for the delay. When no prejudice other than the pretrial confinement itself results, and when a military judge declares he is crediting pretrial confinement against the confinement he otherwise would adjudge, this impresses me as being a satisfactory intermediate remedy. Accordingly I would affirm the decision of the Court of Military Review.