UNITED STATES

v.

**Airman Basic Darnell E. DUNNINGS, FR 452–74–6037 Headquarters, 3320th Retraining Group, Lowry Technical Training Center (ATC).**

**ACM 21794.**

U. S. Air Force Court of Military Review.

19 Aug. 1975.

Appearances: Approved sentence: Bad conduct discharge, forfeiture of one hundred fifty dollars ($150.00) per month for seven (7) months and confinement at hard labor for seven (7) months. Appellate counsel for the Accused: Colonel William E. Cordingly and Major John A. Cutts III. Appellate counsel for the United States: Colonel C. F. Bennett and Captain Frederick P. Waite.

## DECISION

ORSER, Judge:

Tried by general court-martial consisting of a military judge sitting alone, the accused was convicted, despite pleas to the contrary, of one offense each of willful

damage to government property, breach of correctional custody, communication of a threat, and assault on his superior noncommissioned officer in the execution of his office, in violation of Articles 108, 134, and 91, Uniform Code of Military Justice, 10 U.S.C. §§ 908, 934 and 891. He was acquitted of two offenses charging disobedience of an order and disrespectful language toward his superior noncommissioned officer in the execution of his office. The approved sentence extends to a bad conduct discharge, confinement at hard labor for seven months and forfeiture of $150.00 per month for seven months.

Though several errors have been assigned by trial and appellate defense counsel, we consider it necessary to discuss only two. The others are without merit or were discussed in the review of the staff judge advocate and properly resolved adversely to the accused.

The first contention advanced by counsel is that the accused was denied his right to a speedy trial. At trial, counsel argued that the accused's pretrial restraint gave rise to a *Burton*[1] presumption and that the Government failed to meet its consequent heavy burden of demonstrating diligence in bringing the accused to trial. We disagree.

■ At trial, the parties stipulated to the following chronology of pertinent events:

| Date | Event |
| --- | --- |
| 7 Sept 1974 | Accused placed in pretrial confinement |
| 10 Sept 1974 | Charges preferred |
| 13 Sept 1974 | Charges received |
| 16 Sept 1974 | Article 32 investigating officer appointed |
| 10 Oct 1974 | Article 32 investigation completed |
| 5 Nov 1974 | Accused released from pretrial confinement |
| 29 Nov 1974 | Charges referred to trial |
| 6 Dec 1974 | Accused again placed in pretrial confinement |
| 13 and 16 Dec 1974 | Trial dates |

As we calculate it, the total amount of pretrial confinement until commencement of trial amounts to 66 days. Of additional pertinence is the evidence that between 5 November 1974 and 6 December 1974, a total of 31 days, the accused was restricted to the limits of a portion of a dormitory facility within the 3320th Retraining Group, Lowry Air Force Base, Colorado. Based on the accused's unrebutted testimony on the matter, the conditions imposed upon him during his restriction were unusually severe. Although he had originally been assigned to Lowry Air Force Base as a retrainee as a result of a prior court-martial conviction, at the time of this restriction he was no longer a student in the program. Instead he was awaiting discharge. In spite of that, during the period of his restriction he was subjected to the same treatment as a new retrainee and given few, if any, privileges. According to his testimony, he was required to remain in the dormitory building to which restricted, stand daily roll calls and meet 2200 hour bed checks. To leave the dormitory necessitated permission from one of his supervisors. He stated he had discussed his status with the supervisors and was informed he was still in pretrial confinement and would accordingly be granted no privileges outside the dormitory building. Within the building, the accused had access only to a lounge equipped with a television set and a pool table, the hallway, living quarters of other assigned personnel and the administrative office where he performed assigned duties. His understanding was that if he desired to leave the building for any purpose he was required to obtain permission and sign out and in. During his restriction he sought and obtained permission to leave the premises only to visit the legal office. He at no time asked to go elsewhere as it was his understanding that permission would not be granted. Altogether the pretrial confinement and the restriction total 97 days restraint prior to trial, and the Government was obligated to account for this entire period in response to timely motion for dismissal by the defense at trial. *United States v. Brown*, 10 U.S.C.M.A. 498, 28 C.M.R. 64 (1959).

---

1. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

At the outset, we must agree with trial defense counsel that the limitations imposed upon the accused while in restriction were particularly onerous. In fact, we grant they were even more stringent than those examined by the United States Court of Military Appeals in *United States v. Weisenmuller,* 17 U.S.C.M.A. 636, 38 C.M.R. 434 (1968), which the Court labeled as identical to those of a punitive restriction levied by court-martial or Article 15. In spite of such rigors, however, in our view the recited circumstances do not create a *Burton* presumption.

■ In *United States v. Burton,* supra, as all concerned with our military justice system are quite aware, the Court of Military Appeals after reviewing the legislative and judicial history of Article 10, Code, supra, announced a new rule applicable to all offenses occurring thereafter that:

" . . . in the absence of defense requests for continuance, a presumption of an Article 10 violation will exist when pretrial confinement exceeds [90 days].[2] In such cases, this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed. (44 C.M.R. at 172.)

We are aware that in earlier decisions, the Court equated restriction to narrow limits to arrest for purposes of commencement of Government accountability under Article 10, Code, supra. *United States v. Williams,* 16 U.S.C.M.A. 589, 37 C.M.R. 209 (1967); *United States v. Weisenmuller,* supra; accord *United States v. Haynes,* 15 U.S.C.M.A. 122, 35 C.M.R. 94 (1964). In *Burton,* however, the subject of concern was lengthy pretrial confinement and the Court addressed that form of restraint alone in forging the new rule to be applied thereafter. It stands to reason that had the Court intended the presumption and consequent heavy burden to apply as well to onerous forms of restrictions the decision specifically would have embraced such restraint. We are thus compelled to limit application of the rule to situations involving pretrial con-

finement in excess of 90 days and not, conversely, to similar periods of restriction or, as here, a combination of confinement and restriction together totaling over 90 days. *United States v. Sawyer,* 47 C.M.R. 857 (N.C.M.R. 1973); but see *United States v. Brewer,* 47 C.M.R. 511 (A.C.M.R. 1973).

■ Having concluded that the heavy burden mandated by *Burton* is inapplicable to the circumstances here, we have nonetheless carefully scrutinized the record on the basis of pre or non-*Burton* standards to determine whether the Government exercised reasonable diligence in bringing the accused to trial. *United States v. Mladjen,* 19 U.S.C.M.A. 159, 41 C.M.R. 159 (1969); *United States v. Gray,* 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973); *United States v. Burton,* supra; *United States v. Washington,* 49 C.M.R. 884 (A.F.C.M.R. 1975); Manual for Courts-Martial, 1969 (Rev.), paragraph 215e. In this consideration we are mindful that the right to a speedy trial is relative. Resolution of the question depends upon the facts and circumstances peculiar to each case. *United States v. Burton,* supra; *United States v. Brown,* 13 U.S.C.M.A. 11, 32 C.M.R. 11 (1962); *United States v. Hawes,* 18 U.S.C.M.A. 464, 40 C.M.R. 176 (1969); *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Though the length and circumstances of pretrial confinement or other severe restraint might be prejudicial per se, normally the time between initial restraint and trial is but one of the factors to be considered. *United States v. Burton,* supra; *United States v. Keaton,* 18 U.S.C.M.A. 500, 40 C.M.R. 212 (1969); *United States v. Hawes,* supra. When, as here, the accused raises the issue by timely motion to dismiss, a burden is imposed on the Government to demonstrate that it proceeded with reasonable dispatch and that the delays attributable to it were not arbitrary, purposeful or oppressive. *United States v. Parish,* 17 U.S.C.M.A. 411, 38 C.M.R. 209 (1968); *United States v. Brown,* supra; Manual for Courts-Martial, supra, paragraph 215e.

**2.** *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

With these principles in mind, we are satisfied that with the exception of the passage of time between completion of the Article 32 Investigation on 10 October 1974, and referral of the charges to trial on 29 November 1974, all necessary pretrial steps were accomplished with acceptable dispatch. Although the Article 32 investigation consumed some 25 days, ample justification for this time is provided. The investigating officer industriously devoted his attention to the investigation throughout the period with only brief periods of delay occasioned by circumstances largely beyond his control, i. e., conflicting schedules of the appointed defense counsel; difficulty in obtaining witnesses; reporter assigned to trials already in progress; time required to obtain monetary estimates of damage to property involved in one of the charges. All in all, we are satisfied, especially in light of the multiple charges and the necessary research required, that the investigating officer concluded his task with all due diligence.

Our concern is thus focused exclusively on the period of time, 50 days by our reckoning, during which the investigation was being considered and the advice of the staff judge advocate was prepared and rendered to the convening authority. During 25 of these days, the accused was in pretrial confinement. During the remaining 25, he was in the severe restriction status previously described.

At trial, when urged by the military judge, the trial counsel called both the author of the advice and the staff judge advocate's chief of military justice to supply the justification, if any, for what on the face of it appears to be an extremely inordinate amount of time to accomplish the advice stage of the proceeding. The chronological highlights of their testimony may be charted as follows:

| Date | Event |
|---|---|
| 10 Oct 1974 | Article 32 Investigation completed. |
| 10 or 11 Oct 1974 | Writing of pretrial advice assigned to author. |
| 14 Oct 1974 through 1 Nov 74 | Consideration of Article 32 investigation; reinterview of some witnesses in effort to clarify summaries of testimony in Article 32 investigation; research on questions of law respecting assault charge; discussions between author of advice and Article 32 investigating officer. |
| 3, 4 or 5 Nov 74 | Intraoffice discussions between chief of military justice, advice author, staff judge advocate and Article 32 investigating officer respecting disposition of assault charge. |
| 5 Nov 74 (according to advice author) or 11 Nov 1974 (according to chief of military justice) | Advice author completes and submits draft of pretrial advice recommending withdrawal of assault charge. |
| 5 or 11 Nov 1974 to 20 or 21 Nov 1974 | Chief of military justice considers draft, discusses it with Article 32 officer, advises author and staff judge advocate; performs independent research and revises portions of advice. |
| 20, 21, or 22 Nov 74 | Revised draft discussed with staff judge advocate and final decisions made. |
| 26 Nov 1974 | Advice prepared in final form. |
| 29 Nov 1974 | Advice submitted to convening authority and charges referred to trial. |

Careful consideration of this chronology and the related circumstances convinces us that except for comparatively brief periods of apparent inactivity during the 50 days in question, an effort was being diligently made to process the charges to resolution. The primary delaying factor centered around an intraoffice dispute respecting disposition of the assault charge. The Article 32 investigating officer on the basis of conflicting testimony and his research, had recommended that the charge be altered to a simple assault. In assigning the task of preparing the pretrial advice, the chief of military justice informed the prospective author that thorough research was required. At issue was the question of whether the alleged noncommissioned offi-

cer victim had by his own conduct precipitated to any appreciable degree the assault by the accused and as a result, could not be considered in the execution of his office as the charge was drafted. See generally, *United States v. Hendrix*, 21 U.S.C.M.A. 412, 45 C.M.R. 186 (1972); *United States v. Struckman*, 20 U.S.C.M.A. 493, 43 C.M.R. 333 (1971); *United States v. Revels*, 41 C.M.R. 475 (A.C.M.R. 1969), pet. denied, 41 C.M.R. 403; *United States v. Garretson*, 42 C.M.R. 472 (A.C.M.R. 1970). Nevertheless, in assigning the project, the chief of military justice instructed the prospective author, a young judge advocate who had never before prepared a pretrial advice, to expedite the task as much as possible. The advice author duly considered the investigation and recommendation of the investigating officer, and following his own research and conversations with some of the witnesses in an effort to clarify their testimony concerning the assault[3], drafted an advice in which he proposed the controversial assault charge be withdrawn. The chief of military justice disagreed, and following various conferences with the author, the Article 32 investigating officer and the staff judge advocate, plus his own research on the issue, eventually rewrote the draft to recommend trial on the charge as preferred. Eventually, all parties agreed with this decision and the advice was formalized and submitted to the convening authority who promptly referred the charges to trial. It is noted that while this was going on both the advice author and the chief of military justice had various unrelated duties to perform including trial work, court-martial reviews, Article 32 investigations, nonjudicial punishments, and the like. Obviously, with these other necessary functions, they could not devote their undivided attention to the project here being examined.

■ Based on the circumstances detailed, and even recognizing that the inexperience of the author of the pretrial advice provides no justification for inordinate delay, especially where as here the accused is under severe restraint,[4] we are nevertheless convinced that the Government exercised reasonable dispatch in the preparation of the pretrial advice. To be sure, viewing the situation in the pristine light of hindsight as we are privileged to do, the Government functionaries could have, and concededly should have completed the advice more promptly. That, however, is not the test; for the Government is entitled to a reasonable time to properly process and consider the available evidence against an accused. *United States v. Gray* and *United States v. Mladjen*, both supra. We suppose that the decision to change the accused's status from confinement to restriction may have relaxed the atmosphere to a degree and in effect prompted the Government officials to devote more time than they otherwise would have to the task at hand. In this connection, the chief of military justice testified the change in status provided an opportunity to defer evaluation of the case a "little longer." Nevertheless, as previously observed the specific periods of time during which no apparent progress was being made were relatively brief. We do not consider these hiatuses, in an otherwise active prosecution, either oppressive or intolerable. *United States v. Brown*, supra. In summary, though the time devoted to preparation of the pretrial advice by no means represents a model of efficiency, on the other hand neither does it indicate gross negligence or callous disregard or indifference to the rights of the accused. *United States v. Burton* ; *United States v. Hawes* ; *United States v. Brown* ; *United States v. Gray*, all supra; *United States v. Amundson*, 23 U.S.C.M.A. 308, 49 C.M.R. 598 (1975).

3. In passing, we deem it appropriate to note that under these circumstances such contact with the witnesses by the staff judge advocate's representative does not amount to an improper consideration of evidence not contained in the Article 32 investigation. The rec-

ord establishes to our satisfaction that the pretrial advice eventually rendered is based solely on the evidence contained in the Article 32 investigation.

4. *United States v. Parish*, supra.

■ As a final significant factor bearing on this determination, we have carefully scrutinized the record and find no indication that the accused suffered specific prejudice by virtue of the delay. In this connection, we are mindful that an otherwise satisfactory explanation for a delay may nevertheless be unreasonable if it results in any impairment or hindrance to the accused in his ability to prepare for trial. *United States v. Smith*, 17 U.S.C.M.A. 55, 37 C.M.R. 319 (1967); *United States v. Cluff*, 41 C.M.R. 1017 (A.F.C.M.R. 1970), pet. denied, 41 C.M.R. 402 (1970); *Barker v. Wingo*, supra. Here, no specific harm was ever alleged by the defense nor is any shown by the circumstances.

We thus conclude that the Government proceeded in a reasonably expeditious manner as required by Article 10, Code, supra, and the delay in rendering the pretrial advice was neither arbitrary nor oppressive. Consequently, the accused was not denied his right to a speedy trial. *United States v. Gray*; *United States v. Mladjen*, both supra; *United States v. Wheeler*, 21 U.S.C. M.A. 468, 45 C.M.R. 242 (1972).

The remaining issue meriting our attention consists of an attack on the adequacy of the post-trial review by the staff judge advocate. Appellate defense counsel contend that the summarization of the accused's testimony on the merits is prejudicially inadequate. While we do not agree with the specific basis for inadequacy urged by counsel, we are nevertheless concerned with a related aspect of the review. As heretofore discussed in connection with the speedy trial issue, the circumstances surrounding the assault charge presented a factual issue for the military judge's resolution concerning whether the victim by his own conduct, consisting of a possible emotional overreaction to a stressful situation, divested himself of his authority as a noncommissioned officer then in the execution of his office as alleged. See generally, *United States v. Hendrix; United States v. Struckman; United States v. Revels*, all supra. Suffice it to relate on this issue that the assault occurred in the midst of an effort to restrain the accused from leaving his superior's office, he earlier having been directed to remain therein. Based on the testimony of the accused and others present, there was evidence that the victim while in a highly emotional state due to an earlier physical effort to prevent the accused from leaving, directed the accused to be seated. When the accused refused to obey, and instead heaped verbal abuse on the sergeant, the latter first remonstrated with the accused in kind and then rushed across the room and "tackled" him in an effort to force compliance with his directive. The others present attempted to separate the combatants and in the struggle the charged assault, a bite on the victim's chest, occurred. One of the other noncommissioned officers present, a security policeman, testified that based on his experience he saw no need for the victim's action which led to the assault.

■ In his general and special findings the military judge resolved the issue against the accused in finding him guilty of the principal charge. While we agree that the evidence fully supports that resolution, the reviewer never presented the issue to the convening authority for his independent consideration and determination of whether the principal charge could be sustained. Though the reviewer's conclusion obviously implies rejection of the theory, the evidence presented should have been fully discussed in terms of its legal consequences to permit the convening authority to arrive at a reasoned decision. *United States v. Cruse*, 21 U.S.C.M.A. 286, 45 C.M.R. 60 (1972); *United States v. Blackwell*, 12 U.S.C.M.A. 20, 30 C.M.R. 20 (1960); *United States v. Fields*, 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958); *United States v. Bennie*, 10 U.S.C.M.A. 159, 27 C.M.R. 233 (1959); *United States v. Lindsey*, 23 U.S.C.M.A. 9, 48 C.M.R. 265 (1974); *United States v. Yarborough*, 50 C.M.R. 149 (A.F.C.M.R. 1975). *United States v. Trevino*, 50 C.M.R. 381 (A.F.C. M.R. 1975).

On the basis of the evidence, there is a fair risk that the convening authority might have been persuaded, in line with the deci-

sions cited, that the victim was not acting within his authority as a noncommissioned officer during the assault. Absent any discussion and reasoned conclusions concerning the issue in the review, the convening authority was deprived of that opportunity. We are thus unable to determine whether the convening authority approved the findings of guilty of the assault charge on the correct legal and factual basis. *United States v. Trevino*, and cases cited therein.

Having so concluded, though we might direct a new review and action to remedy the deficiency, in these circumstances we deem it a more appropriate solution to eliminate any possibility of harm to the accused by modifying the guilty finding of assault to conform to the evidence and discussion delineated in the review. In that respect, the review considered in its totality fully supports the accused's conviction of the lesser included offense of assault consummated by a battery under Article 128, Code, supra, even assuming *arguendo*, the victim by his precipitous conduct divested himself of his status and authority as a superior noncommissioned officer in the execution of his office.

For the reasons stated, so much of the finding of guilty of Specification 2 of Charge IV as finds that the victim of the assault was a noncommissioned officer then in the execution of his office, is set aside. We affirm only so much of the offense as finds the accused guilty of assaulting the victim at the time, place, and in the manner alleged, in violation of Article 128, Code, supra. In view of our partial disaffirmance, we have reassessed the sentence on the basis of the entire record and find it nevertheless appropriate.

The findings of guilty, as modified herein, and the sentence are

Affirmed.

ROBERTS, Senior Judge, concurs.

SANDERS, Judge, absent.

UNITED STATES

v.